UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
SOUTHERN DIVISION
-----------------------------------------------------------X
ANDREW JAY McGRATH,
          Movant/Petitioner,
    vs.                                      No. _____
UNITED STATES OF AMERICA,        No. 1:09-CR-0169-WTL-KPF
          Respondent.
-----------------------------------------------------------X

**1:11-cv-0656 WTL-TAB**

**Prisoner Number and Place of Confinement:**
Register No. 09275-028, U.S. Penitentiary, Tucson, Arizon
(Clerk of Court please take note: movant is represented by counsel)

## MOTION TO VACATE SENTENCE
## PURSUANT TO 28 U.S.C. § 2255

1. **Name and location of the court which entered the judgement of conviction under attack:** United States District Court, Southern District of Indiana, Southern Division, Indianapolis, Indiana, Case No. 1:09-CR-0169-WTL-KPF.

2. **Date of judgment of conviction:** Judgment including sentence entered May 7, 2010.

3. **Length of sentence:** Andrew Jay McGrath was sentenced to a total of 370 years of imprisonment. This term of imprisonment consisted of a term of 180 months as to each of Counts 1 through 24 and a term of 120 months on Count 26 of the indictment to be served consecutively.

4. **Nature of crime (all counts):** Counts 1 to 24 charged violations of 18 U.S.C. § 2251(a). Count 25 charged a violation of 18 U.S.C. § 2251A(b). Count 26 charged a violation of 18 U.S.C. § 2252(a)(4).

5. What was your plea? Guilty.

**If you entered a plea of guilty to one count or indictment, and a not guilty plea to another count or indictment, give details:** Pled guilty to Counts 1 to 24 and Count 26. Plead not guilty to Count 25 which was dismissed.

6. **Kind of Trial:** Not applicable because Mr. McGrath did not have a trial.

7. **Did you testify at a pre-trial, trial or post-trial hearing?** No.

8. **Did you appeal from the judgment of conviction?** No.

1

9.  If you did appeal, answer the following: (a)-(g) do not apply.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions or applications concerning this judgment of conviction in any court? No.

11. If your answer to Question 10 was "yes," give the following information:

    (a) - (d) do not apply.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

    **Ground one:** Mr. McGrath's constitutional right to the effective assistance of counsel was violated.

    (a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

    (i) <u>Mr. McGrath Was Denied Effective Assistance Of Counsel At The Time He Pled Guilty Because His Attorney Failed To Conduct A Reasonable Investigation Which Would Have Shown That There Was A Meritorious Suppression Issue Regarding The Search Of His Home and Computers.</u>

    Mr. McGrath's trial attorney, William Marsh( hereinafter referred to as either "Mr. Marsh" or "defense counsel") failed to file a motion to suppress the unlawfully obtained digital evidence and other evidence obtained from Mr. McGrath's home and the computers therein. Defense counsel failed to file such a motion because he did not conduct a reasonable investigation into the facts and circumstances regarding the search of Mr. McGrath's home and the computers therein. If Mr. Marsh had conducted such an investigation, he could have filed a meritorious motion to suppress all of the evidence obtained from Mr. McGrath's home, including all evidence obtained from the computers inside the home, the computer equipment, a camera seized from the home and all fruits of the search of the home and the computers therein by law enforcement officials.

    More specifically, if such an investigation had been conducted, defense counsel could have provided this Court with ample legal authority to suppress that evidence. An examination of the legal authority in support of the suppression of such evidence begins with the well-established legal principle that the Fourth Amendment's prohibition against unreasonable searches and seizures forbids most warrantless seizures. Indeed, warrantless searches are presumptively illegal. *See Katz v. United States,* 389 U.S. 347,

357 (1967). The only exception which allows a full search for an investigative purpose without a search warrant or probable cause is in cases of voluntary consent. *See Florida v. Royer,* 460 U.S. 491 (1983). The government bears the burden to establish that a defendant voluntarily consented to a search. *Id.*

An application of this exception first involves an analysis of whether the consent was voluntarily given and, if so, an examination of whether the scope of the search conformed with the precise limits of the exception as it has been judicially defined. *E.g., United States v. Benezario,* 339 F.Supp.2d 361, 367 (D.P.R. 2004); *United States v. Maldonado Garcia,* 655 F.Supp. 1363, 1366 (D.P.R. 1987); *see also United States v. Montoya,* 760 F.Supp. 37, 39-40 (E.D.N.Y. 1991). In order to find consent, a district court must find from the totality of the circumstances that (1) the consent was voluntary, and (2) that the search did not exceed the scope of the consent. *United States v. Price,* 925 F.2d 1268, 1270 (10th Cir. 1991); *see also Benezario,* 339 F.Supp.2d at 367; *Schneckloth v. Bustamonte,* 412 U.S. 218, 233 (1973). A search conducted pursuant to consent may not exceed the scope of the consent sought and given. *Florida v. Jimeno,* 500 U.S. 248 (1991): *Benezario, supra.* In addition, one of the factors to take into consideration when analyzing the totality of the circumstances is whether the government agents gained entry by ruse or deception. *E.g., Benezario,* 339 F.Supp.2d at 367.

Numerous court have condemned the use of ruses and have held that "when a government agent uses deceit, trickery, or misrepresentation to secure consent to search, said consent has been held to be involuntary." *United States v. Andrews,* 746 F.2d 247 (5th Cir. 1984); *United States v. Scherer,* 673 F.2d 176, 181-82 (7th Cir. 1982)(agent posing as cousin of an informant invited on property to build duck blinds); *United States v. Wright,* 641 F.2d 602 (8th Cir. 1981) (officers pretending to have car trouble and asking for tools and a flashlight see drugs inside when door opened); *United States v. Raines,* 536 F.2d 796, 799-800 (8th Cir. 1976) (agent falsely represented himself as a mutual friend of occupant's drug associate and stated truthfully that the associate had been arrested); *United States v. Tweel,* 550 F.2d 297 (5th Cir. 1977) (failure of IRS agent to apprise the defendant of criminal nature of the investigation constituted deliberate deception by agent and since consent to search was induced by this deceit, the consent to search was unreasonable under the Fourth Amendment); *United States v. Bosse,* 898 F.2d 113, 115 (9th Cir. 1990)(federal agent posing as assisting a state licensing inspector); *United States v. Evans,* 898 F.2d 155, 155 (6th Cir. 1990)("Law enforcement officers may not obtain consent to a search through trickery or subterfuge."); *Benezario,* 339 F.Supp.2d at 367-69) ( DEA agents pretending to be U.S. Marshals, supposedly looking for a fugitive, searched defendant's house); *Maldonado Garcia, supra (* government agents gained access to an apartment by falsely stating to the defendant that they had a summons for him; "[O]fficers cannot use a ruse to gain access unless they have more than mere conjecture that criminal activity is underway. To hold other wise would be to give police a blanket license to enter homes randomly in the hope of uncovering incriminating evidence and information"); *see also Hoffa v. United States,* 385 U.S. 293, 301 (1966)

("The Fourth Amendment can certainly be violated by guileful as well as by forcible intrusions into a constitutionally protected area.").

An otherwise valid consent may not be sufficient to render a search constitutional if it follows from prior government misconduct. In such circumstances, the unlawful conduct "taints" the later-given consent. *Bumper v. North Carolina*, 391 U.S. 543 (1968); *United States v. Buchanan*, 904 F.2d 349, 355 (6th Cir. 1990) (unlawful presence on property taints later consent). "Where consent follows a prior unlawful act by the government, that consent is tainted, and cannot on its own justify a search." *Benezario*, 339 F.Supp.2d at 368.

In the instant case, according to the Revised Presentence Investigation Report, paragraphs 12 to 14, on August 23, 2009, Jane Doe 1's mother was bathing her and going over "good touch, bad touch as she would occasionally do." According to the PSI, at that time, Jane Doe 1 disclosed to her parents that "Andy" had touched her vagina and taken nude pictures of her that day. The next day, Jane Doe 1 was forensically interviewed. However, she was unable to disclose the abuse during the interview. For that reason, law enforcement officers did not have probable cause to obtain a search warrant to search Mr. McGrath's home. Approximately three weeks later, on September 14, 2009, three law enforcement officials, including a federal Immigration and Customs Enforcement ("ICE") agent, knocked loudly on the door of Mr. McGrath's home where he lived with his parents and one of them announced that he was with the Department of Homeland Security (of which ICE is a part). When Mr. McGrath's father opened the door, the law enforcement agents lied to Mr. McGrath and his parents by falsely stating that they were there because they had received a complaint about a photograph of a girl in a swimsuit on Mr. McGrath's family website (which is a family website for his large family to enjoy pictures of each other) and that, for that reason only, they wanted to go through the pictures on their home computers to locate this photograph of a girl in a swimsuit. In truth and in fact, the law enforcement officials were there because of the complaint by Jane Doe 1's mother which Jane Doe1 had never corroborated. However, this fact was never disclosed. Instead the lie about the swimsuit photograph on the family website was a subterfuge concocted to give the law enforcement officials a colorable reason to search Mr. McGrath's home and the computers therein when they had no probable cause for the issuance of a search warrant to do so. Because Mr. McGrath and his parents knew that there were no pornographic pictures on the family website, they consented to the law enforcement officials looking at Mr. McGrath's parents' computer located on the first floor of the house. Mr. McGrath then entered the password for his family website and sat with the officials while they looked at that website. Upon locating a non-pornographic photograph of a niece of Mr. McGrath in a swimsuit beside a pool at a swimsuit meet on the family website, the officials falsely stated that this was probably the photograph that had led them to come to the McGrath home and acknowledged that the photograph was not pornographic. However, the law enforcement officials then continued their ruse and told the McGraths that, in order to ensure that their investigation of the swimsuit

photograph on the family website was complete, they needed to look at what was on Mr. McGrath's laptop which was in his bedroom upstairs. Mr. McGrath consented to them looking at his laptop based upon their ruse and deception that they were merely investigating the photographs on the family website (which the law enforcement officials and the McGraths knew did not contain pornographic images). Mr. McGrath and the agents then went upstairs where the agents searched the data and images on Mr. McGrath's laptop and did not limit the scope of their search to the family website. If defense counsel had investigated the circumstances of the search, he would have known that this occurred and that this was improper under the case law. *See, e.g., United States v. Dichiarinte,* 445 F.2d 126 (7th Cir. 1971) (holding that "[g]overnment agents may not obtain a consent to search on a representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search"). Mr. McGrath's parents stood in the hall by the entrance to Mr. McGrath's room while the search of the laptop occurred and could hear the conversation occurring in the room. After the law enforcement officials found pornographic photographs on Mr. McGrath's laptop, they told Mr. McGrath that, if he did not sign a written consent for them to search his computers and electronic storage devices, they would detain him and would obtain a warrant to search them anyway. The law enforcement officials did not orally inform Mr. McGrath that he could refuse to consent.

Thus, the law enforcement officials gained entry into the McGrath's home by ruse and deception. The consent to search the computers was the product of trickery. The oral consent given was of a limited nature and for a limited purpose (i.e. to search the family website which undisputedly contains no pornographic pictures). The facts, if developed at a suppression hearing, would show that the agents exceeded the scope of the consent and, when they found what they were looking for, only then did they obtain a written consent to search Mr. McGrath's computers and electronic storage devices by threatening to detain Mr. McGrath while a search warrant was obtained. Furthermore, the written consent form is not evidence of a valid consent since "said consent form was signed after the facts and ...[Mr. McGrath's] original consent was tainted and therefore, the post written waiver cannot validate the prior search." *See Benezario,* 339 F.Supp.2d at 369; *see also United States v. Laymon,* 730 F. Supp. 332, 341 (D. Colo. 1990).

In conclusion, defense counsel had ample legal and factual support to suppress the evidence seized from Mr. McGrath's home and the computers therein. Defense counsel would have known about these facts if he had interviewed Mr. McGrath or his parents about the circumstances of the search of their home but he never did so. For this reason, Mr. McGrath's guilty plea was entered without the informed advice of counsel regarding this meritorious suppression issue which would have done substantial if not fatal damage to the government's case. As a result of defense counsel's complete lack of investigation into the facts and circumstances of the search of Mr. McGrath's home and the computers therein, Mr. McGrath's decision to plead guilty was not an intelligent and voluntary choice among the courses of action open to him. Mr McGrath was prejudiced by this

5

deficient performance of his counsel because, if Mr. McGrath had known that the evidence seized from his home and computers and the fruits thereof could be suppressed, he would not have pleaded guilty in this case.

(b) **Direct Appeal of Ground One:**

    (1) **If you appealed from the judgment of conviction, did you raise this issue?** Not Applicable.

    (2) **If you did not raise this issue in your direct appeal, explain why:** Not Applicable.

(c) **Post-Conviction Proceedings:**

    (1) **Did you raise this issue in any post-conviction motion, petition, or application:** No.

    (2) **If your answer to Question (c)(1) is "Yes," state the following information:** 2 through 7 do not apply.

**Ground two:** Mr. McGrath involuntarily entered a guilty plea because his counsel failed to inform him that he had grounds to file a motion to suppress the evidence obtained from his home and the computers therein.

Because it waives numerous constitutional rights, a guilty plea must be knowing, intelligent, and voluntary. A guilty plea must represent a voluntary and intelligent choice among the various options available to the defendant.

Because of defense counsel's failure properly to inform himself of available facts that would have shown the existence of a meritorious suppression motion and his resulting failure to advise Mr. McGrath of this Fourth Amendment claim, Mr. McGrath's plea was not knowingly and voluntarily entered.

(b) **Direct Appeal of Ground Two:**

    (1) **If you appealed from the judgment of conviction, did you raise this issue?** Not Applicable.

    (2) **If you did not raise this issue in your direct appeal, explain why:** Not Applicable.

(c) **Post-Conviction Proceedings:**

  (1) **Did you raise this issue in any post-conviction motion, petition, or application:** No.

  (2) **If your answer to Question (c)(1) is "Yes," state the following information:** 2 through 7 do not apply.

13. **Is there any ground in this motion you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:** The grounds of ineffective assistance of counsel and an involuntary guilty plea have not been previously presented in federal court because these claims are properly raised in a motion to vacate pursuant to 28 U.S.C. § 2255. Furthermore, as a result of the ineffective assistance of his counsel, Mr. McGrath did not realize at the time that he entered his guilty plea that he had a defense that the evidence seized from his home which is crucial to the charges herein was subject to suppression.

14. **Do you have any motion, petition or appeal now pending in any court as to the judgment under attack?** No.

15. **Give the name and address, if known, of each attorney who represented you in the following stages of the judgement attacked herein:**

 **At preliminary hearing:** Not Applicable.

 **At arraignment and plea:** William Marsh, 111 Monument Circle, Suite 752, Indianapolis, Indiana 46204-5173.

 **At trial:** William Marsh, 111 Monument Circle, Suite 752, Indianapolis, Indiana 46204-5173.

 **At sentencing:** William Marsh, 111 Monument Circle, Suite 752, Indianapolis, Indiana 46204-5173.

 **In any post conviction-proceeding:** Not Applicable.

16. **Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?** Yes.

17. **Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?** No.

18. **Timeliness of Motion:** The general rule is that a Section 2255 motion must be filed within one year after the "date on which the judgment of conviction becomes final." If, as in this case, no direct appeal is sought, the judgment of conviction becomes final for

purposes of Section 2255 upon the expiration of the 10-day period for filing a direct appeal. *See, e.g., United States v. Plascencia*, 537 F.2d 385, 388 (5th Cir. 2008)(agreeing with "at least three of our sister circuits"that "when a federal prisoner fails to file a notice of appeal from his conviction (in other words, when he fails to pursue the direct appeal process), the conviction becomes final for purposes of § 2255 upon the expiration of the 10-day period for filing a direct appeal"); *Moshier v. United States*, 402 F.2d 116, 118 (2d Cir. 2005)(*per curiam*)(joining 6th Circuit and 3d Circuit in holding that, "for purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires"); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004)("an unappealed federal criminal judgment becomes final ten days after it is entered, for purposes of the § 2255 statute of limitations, at least where there has been no district court extension of appeal time for good cause or excusable neglect"); *Kapral v. United States*, 166 F.3d at 577 ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."). The 10-day period for filing Mr. McGrath's notice of appeal expired on May 17, 2010. Thus, the one-year limitation period provided in Section 2255 terminates on May 17, 2011 and the instant motion to vacate filed by Mr. McGrath was filed within that one-year limitation period.

WHEREFORE, for the foregoing reasons, the movant prays that this Court:

a. Direct that an Answer be filed and then, after an evidentiary hearing,

b. Vacate the movant's conviction and sentence and grant him any other relief to which he may be entitled.

Respectfully submitted,

_____
MARCIA J. SILVERS, ESQUIRE
Florida Bar No. 342459
Marcia J. Silvers, P.A.
40 Northwest 3rd Street, Penthouse One
Miami, Florida 33128
Telephone: 305/774-1544
Facsimile: 305/403-8209

*Attorney for Movant/Petitioner*
*Andrew Jay McGrath*

## OATH

I declare under penalty of perjury that the foregoing is true and correct. Executed on

May 12, 2011
(Date)

attorney for  _____
Signature of Movant/Petitioner
Andrew Jay McGrath